1  JOSEPH T. MCNALLY
   United States Attorney,
2  Acting Under Authority Conferred
   by 28 U.S.C. § 515
3  MACK E. JENKINS
   Assistant United States Attorney
4  Chief, Criminal Division
   CHARLES E. PELL (Cal. Bar No. 210309)
5  MELISSA S. RABBANI (Cal. Bar No. 283993)
   Assistant United States Attorneys
6  Santa Ana Branch Office
       United States Courthouse
7      411 West Fourth Street, Suite 8000
       Santa Ana, California  92701
8      Telephone:  (714) 338-3500
       Facsimile:  (714) 338-3561
9      E-mail:     charles.e.pell2@usdoj.gov
                   Melissa.rabbani@usdoj.gov
10
   Attorneys for Plaintiff
11 UNITED STATES OF AMERICA

**FILED**
CLERK, U.S. DISTRICT COURT

**8/16/23**

CENTRAL DISTRICT OF CALIFORNIA
BY:_____EB_____DEPUTY

12              UNITED STATES DISTRICT COURT

13          FOR THE CENTRAL DISTRICT OF CALIFORNIA

14                   SOUTHERN DIVISION

| 15 UNITED STATES OF AMERICA, | No. 8:23-cr-00114-JWH |
|---|---|
| 16           Plaintiff, | PLEA AGREEMENT FOR DEFENDANT HARISH SINGH SIDHU |
| 17                v. | |
| 18 HARISH SINGH SIDHU, aka "Harry Sidhu," | |
| 19 | |
| 20           Defendant. | |
| 21 | |

22      1.    This constitutes the plea agreement between HARISH SINGH

23 SIDHU, also known as "Harry Sidhu," ("defendant") and the United

24 States Attorney's Office for the Central District of California (the

25 "USAO") in the investigation of public corruption within the City of

26 Anaheim.  This agreement is limited to the USAO and cannot bind any

27 other federal, state, local, or foreign prosecuting, enforcement,

28 administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

a.    Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a four-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Obstruction of Justice (Destruction, Alteration, Or Falsification Of Records In Federal Investigations), in violation of 18 U.S.C. § 1519 (count one); Wire Fraud, in violation of 18 U.S.C. § 1343 (count two); and False Statement to Federal Agency, in violation of 18 U.S.C. § 1001(a)(2) (counts three and four).

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.    Defendant agrees that any and all criminal debt

2

1   ordered by the Court will be due in full and immediately.  The

2   government is not precluded from pursuing, in excess of any payment

3   schedule set by the Court, any and all available remedies by which to

4   satisfy defendant's payment of the full financial obligation,

5   including referral to the Treasury Offset Program.

6          i.   Complete the Financial Disclosure Statement on a form

7   provided by the USAO and, within 30 days of defendant's entry of a

8   guilty plea, deliver the signed and dated statement, along with all

9   of the documents requested therein, to the USAO by either email at

10  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

11  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

12  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

13  criminal debt shall be assessed based on the completed Financial

14  Disclosure Statement and all required supporting documents, as well

15  as other relevant information relating to ability to pay.

16         j.   Authorize the USAO to obtain a credit report upon

17  returning a signed copy of this plea agreement.

18         k.   Consent to the USAO inspecting and copying all of

19  defendant's financial documents and financial information held by the

20  United States Probation and Pretrial Services Office.

                        THE USAO'S OBLIGATIONS

22  3.    The USAO agrees to:

23         a.   Not contest facts agreed to in this agreement.

24         b.   Abide by all agreements regarding sentencing contained

25  in this agreement.

26         c.   At the time of sentencing, provided that defendant

27  demonstrates an acceptance of responsibility for the offenses up to

28  and including the time of sentencing, recommend a two-level reduction

                                  3

1  in the applicable Sentencing Guidelines offense level, pursuant to
2  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
3  additional one-level reduction if available under that section.

4       d.    Recommend that defendant be sentenced to a term of
5  imprisonment no higher than the low end of the applicable Sentencing
6  Guidelines range, provided that the offense level used by the Court
7  to determine that range is 11 or higher and provided that the Court
8  does not depart downward in offense level or criminal history
9  category.  For purposes of this agreement, the low end of the
10 Sentencing Guidelines range is that defined by the Sentencing Table
11 in U.S.S.G. Chapter 5, Part A, without regard to reductions in the
12 term of imprisonment that may be permissible through the substitution
13 of community confinement or home detention as a result of the offense
14 level falling within Zone B or Zone C of the Sentencing Table.

15      e.    Except for criminal tax violations (including
16 conspiracy to commit such violations chargeable under 18 U.S.C.
17 § 371), not further criminally prosecute defendant for violations of
18 federal criminal law arising out of defendant's conduct described in
19 the agreed-to factual basis set forth in paragraph 15 below.
20 Defendant understands that the USAO is free to criminally prosecute
21 defendant for any other unlawful past conduct or any unlawful conduct
22 that occurs after the date of this agreement.  Defendant agrees that
23 at the time of sentencing the Court may consider the uncharged
24 conduct in determining the applicable Sentencing Guidelines range,
25 the propriety and extent of any departure from that range, and the
26 sentence to be imposed after consideration of the Sentencing
27 Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).
28

1

### NATURE OF THE OFFENSES

2    4.   Defendant understands that for defendant to be guilty of
3  the crime charged in count one of the information, that is,
4  Obstruction of Justice — Destruction, Alteration or Falsification of
5  Records in Federal Investigations, in violation of Title 18, United
6  States Code, Section 1519, the following must be true: (1) Defendant
7  knowingly altered, destroyed, concealed, or falsified a record,
8  document, or tangible object; and (2) Defendant acted with the intent
9  to impede, obstruct, or influence an actual or contemplated
10 investigation of a matter within the jurisdiction of any department
11 or agency of the United States.

12   5.   Defendant understands that for defendant to be guilty of
13 the crime charged in count two of the information, that is, Wire
14 Fraud, in violation of Title 18, United States Code, Section 1343,
15 the following must be true: (1) Defendant knowingly devised a scheme
16 or plan to defraud, or a scheme or plan for obtaining money or
17 property by means of false or fraudulent pretenses, representations,
18 or promises; (2) The statements made as part of the scheme were
19 material; that is, they had a natural tendency to influence, or were
20 capable of influencing, a person to part with money or property;
21 (3) Defendant acted with the intent to defraud, that is, the intent
22 to deceive and cheat; and (4) Defendant used, or caused to be used,
23 an interstate wire communication to carry out or attempt to carry out
24 an essential part of the scheme.

25   6.   Defendant understands that for defendant to be guilty of
26 the crimes charged in counts three and four of the information, that
27 is, False Statement To Federal Agency, in violation of Title 18,
28 United States Code, Section 1001(a)(2), the following must be true:

1  (1) Defendant made a false statement; (2) The statement was made in a
2  matter within the jurisdiction of a federal executive agency;
3  (3) Defendant acted willfully; that is, the defendant acted
4  deliberately and with knowledge both that the statement was untrue
5  and that his conduct was unlawful; and (4) The statement was material
6  to the activities or decisions of a federal executive agency; that
7  is, it had a natural tendency to influence, or was capable of
8  influencing, the agency's decisions or activities.

9  <u>PENALTIES AND RESTITUTION</u>

10      7.   Defendant understands that the statutory maximum sentence
11  that the Court can impose for a violation of Title 18, United States
12  Code, Section 1519, is: 20 years of imprisonment; a three-year period
13  of supervised release; a fine of $250,000 or twice the gross gain or
14  gross loss resulting from the offense, whichever is greatest; and a
15  mandatory special assessment of $100.

16      8.   Defendant understands that the statutory maximum sentence
17  that the Court can impose for a violation of Title 18, United States
18  Code, Section 1343, is: 20 years of imprisonment; a three-year period
19  of supervised release; a fine of $250,000 or twice the gross gain or
20  gross loss resulting from the offense, whichever is greatest; and a
21  mandatory special assessment of $100.

22      9.   Defendant understands that the statutory maximum sentence
23  that the Court can impose for each violation of Title 18, United
24  States Code, Section 1001(a)(2), is: five years of imprisonment; a
25  three-year period of supervised release; a fine of $250,000 or twice
26  the gross gain or gross loss resulting from the offense, whichever is
27  greatest; and a mandatory special assessment of $100.

28      10.  Defendant understands, therefore, that the total maximum

1  sentence for all offenses to which defendant is pleading guilty is:

2  50 years of imprisonment; a three-year period of supervised release;

3  a fine of $1,000,000 or twice the gross gain or gross loss resulting

4  from the offenses, whichever is greatest; and a mandatory special

5  assessment of $400.

6      11.  Defendant understands that defendant will be required to

7  pay full restitution to the victim(s) of the offenses to which

8  defendant is pleading guilty.  The parties currently believe that the

9  applicable amount of restitution for count two is approximately

10  $15,887.50, which as of the date of this agreement, defendant has

11  already paid to the victim, but recognize and agree that this amount

12  could change based on facts that come to the attention of the parties

13  prior to sentencing.

14      12.  Defendant understands that supervised release is a period

15  of time following imprisonment during which defendant will be subject

16  to various restrictions and requirements.  Defendant understands that

17  if defendant violates one or more of the conditions of any supervised

18  release imposed, defendant may be returned to prison for all or part

19  of the term of supervised release authorized by statute for the

20  offense that resulted in the term of supervised release, which could

21  result in defendant serving a total term of imprisonment greater than

22  the statutory maximum stated above.

23      13.  Defendant understands that, by pleading guilty, defendant

24  may be giving up valuable government benefits and valuable civic

25  rights, such as the right to vote, the right to possess a firearm,

26  the right to hold office, and the right to serve on a jury. Defendant

27  understands that he is pleading guilty to a felony and that it is a

28  federal crime for a convicted felon to possess a firearm or

1  ammunition.  Defendant understands that the convictions in this case
2  may also subject defendant to various other collateral consequences,
3  including but not limited to revocation of probation, parole, or
4  supervised release in another case and suspension or revocation of a
5  professional license.  Defendant understands that unanticipated
6  collateral consequences will not serve as grounds to withdraw
7  defendant's guilty pleas.
8      14.  Defendant and his counsel have discussed the fact that, and
9  defendant understands that, if defendant is not a United States
10  citizen, the convictions in this case makes it practically inevitable
11  and a virtual certainty that defendant will be removed or deported
12  from the United States.  Defendant may also be denied United States
13  citizenship and admission to the United States in the future.
14  Defendant understands that while there may be arguments that
15  defendant can raise in immigration proceedings to avoid or delay
16  removal, removal is presumptively mandatory and a virtual certainty
17  in this case.  Defendant further understands that removal and
18  immigration consequences are the subject of a separate proceeding and
19  that no one, including his attorney or the Court, can predict to an
20  absolute certainty the effect of his convictions on his immigration
21  status.  Defendant nevertheless affirms that he wants to plead guilty
22  regardless of any immigration consequences that his pleas may entail,
23  even if the consequence is automatic removal from the United States.
24                              FACTUAL BASIS
25      15.  Defendant admits that defendant is, in fact, guilty of the
26  offenses to which defendant is agreeing to plead guilty.  Defendant
27  and the USAO agree to the statement of facts provided below and agree
28  that this statement of facts is sufficient to support pleas of guilty

1    to the charges described in this agreement and to establish the

2    Sentencing Guidelines factors set forth in paragraph 17 below but is

3    not meant to be a complete recitation of all facts relevant to the

4    underlying criminal conduct or all facts known to either party that

5    relate to that conduct.

6        At all times relevant to this plea agreement, defendant was the

7    Mayor of the City of Anaheim, California (the "City"), having been

8    elected to that position in 2018.  Defendant previously served as a

9    member of the Anaheim City Council ("City Council") since 2004.

10   Defendant resigned as City Mayor in May 2022, shortly after the

11   Federal Bureau of Investigation's ("FBI") public corruption

12   investigation related to the City became public.

13       In around July 2020, the City was negotiating the sale of Angel

14   Stadium with the Los Angeles Angels professional baseball team and

15   SRB Management (collectively "the Angels").  Defendant sought out and

16   became a member of the City's negotiating team for the stadium sale.

17   Defendant provided confidential inside information belonging to the

18   City – including confidential negotiation information – to then-CEO

19   of the Anaheim Chamber of Commerce, Todd Ament, and to a consultant

20   working for the Angels ("Angels consultant"), so that the Angels

21   could buy Angel Stadium on terms beneficial to the Angels.  Defendant

22   secretly provided that information, which he had received in his

23   position as City Mayor.  Fifteen months after defendant secretly

24   provided that confidential information to the Angels consultant and

25   Ament, federal law enforcement covertly recorded defendant stating

26   that he expected a $1,000,000 campaign contribution from the Angels

27   after the Angels succeeded in buying Angel Stadium from the City.

28       Defendant knowingly destroyed multiple email messages and

1  documents related to this conduct, which constituted federal
2  obstruction of justice because defendant deleted those email messages
3  with the intent to impede and obstruct the FBI's investigation of
4  public corruption surrounding the City's potential sale of Angel
5  Stadium.   One of the email messages that defendant deleted was an
6  email he had sent on July 21, 2020 to the Angels consultant and
7  Ament, which was entitled "4844-8343-9299.2 Key Issues – Stadium
8  Transaction Agreement.docx."   That email message included an
9  attachment drafted by attorneys for the City, which contained
10  confidential negotiation information related to the potential sale of
11  Angel Stadium, including discussion of issues related to price and
12  other purchase/sale terms.   For example, the section entitled "Lease
13  Assignment: Parking" in that document advised: "[The Angels]
14  eliminate the requirement that they maintain at least 12,500 parking
15  spaces –so upon closing they could immediately amend the lease to
16  limit their parking obligation and then flip the land for millions
17  more than they paid for it.   For example, reducing their parking
18  obligation by 4,000 spaces would translate to $64M in increased land
19  value. … [T]he City has publicly acknowledged that the purchase price
20  would be much higher without this obligation."   Defendant was using
21  the Angels consultant and Ament to provide that confidential inside
22  information to the Angels so that the Angels could use that
23  information in the negotiations with the City to purchase Angel
24  Stadium on terms beneficial to the Angels.

25      Defendant also deleted an email message that the Angels
26  consultant had sent to defendant, two City Council members, two City
27  employees including the Chief Communications Officer, the President
28  of the Angels, a Senior Vice President of the Angels, Ament, and

1   others on September 20, 2020, entitled "Angels Deal Debate/Council

2   Prep – ROUND 1." This email used the personal email addresses of

3   defendant, the two City Council members, and the city staff, rather

4   than their City-provided official email addresses.   That email

5   message included an attachment entitled "Angels Council Debate

6   Prep.docx," which listed individuals who would be participating in

7   mock City Council meetings about the Angel Stadium sale in advance of

8   the actual City Council meeting for that proposed sale, including but

9   not limited to defendant, two then-current City Council members, two

10  City employees, the Angels consultant, Ament, the President of the

11  Angels, and an attorney for the Angels.   It also detailed items for

12  the mock City Council meeting sessions, scheduled for the following

13  day, September 21, 2020:

14      Session 1
        1. We will run through a mock Council Session straight through
15  one time at the start to identify pitfalls and areas of vulnerability
        2. We will then do a debrief and make notes for areas of
16  strength, vulnerability, and areas needed for improvement.
        3. Time permitting, we will do a second run through, stopping at
17  key points to emphasize key moments.

18      Between Sessions 1 & 2
        1. Participants will be asked to study their roles and come
19  prepared for Session 2 to be at the top of their game.
        2. [Angels] team available to help develop "zingers", responses,
20  and other points to improve performance.

21      . . .

22      Session 3
        1. This is the day of the Council Meeting
23      2. We will do a quick run through as time permits, focusing on
    key moments as needed.

24

25  In addition to the above, the "Angels Council Debate Prep" document

26  also detailed topics on which each participant should focus, such as:

27      Mayor Harry Sidhu
        • Mayor Sidhu will play himself
28      • He will preside over the meeting

                                    11

1  • He is expected to be a strong defender of the deal and know
its terms, at least at the policy level, well.

2

3  Mayor Pro Tem []
   • Plays himself
   • Focus on benefits to D5
4        o Parks
         o Grocery Store
5  • Expected to be focus of attacks by Moreno due to Election
   • Focus on Angels charity
6  • Focus on union jobs
   • Focus on Anaheim History

7

8  Council Member []
   • Plays himself
   • Focus on benefits to Whole City
9        o Keep the Angels
         o Economic Development & Jobs
10       o Focus on Taxpayer benefits, such as Privatizing Stadium
   • Support Mayor on Parliamentary Angles
11 • Attack Moreno on Vulnerabilities

12 Previously, in 2019, defendant had provided a confidential appraisal

13 range related to Angel Stadium to Ament to give to the Angels, months

14 before the appraisal was made public.

15     Approximately 16 months after defendant provided the

16 confidential inside information to the Angels, he was secretly

17 recorded stating that he expected to receive a large campaign

18 contribution from the Angels after the Angel Stadium sale was

19 completed; that is, defendant expected $1 million to be directed to a

20 political action committee (PAC) to be spent on defendant's behalf

21 during the next election.  During the investigation, FBI agents

22 secretly recorded multiple statements by defendant on that topic.

23 For example, on December 6, 2021, defendant made the following

24 statement, which was surreptitiously recorded for the FBI:

25     Because I, I've said, you gotta at least, minimum

26     of a million dollars to come up with my election.  They

27     have to.  And of course, you know, . . . if Angels

28     project would conclude next year is approved

                                12

1    hopefully, we'll push for them at least half a million
2    dollars.  You know, for [Angel's representative] to
3    say "no" is bad, for them not to say no on that.
4  During a similar discussion on January 28, 2022, which was also
5  covertly recorded for the FBI, defendant stated:
6          Because I am hoping to get at least a million
7    from I'm going to be pushing it. [Angel's
8    representative] actually asked me. He said, "What can
9    I do for your election?" I said, "Let me finish your
10   deal first, and then we'll talk about that."
11         . . .
12         So I'm going to be asking for a million dollars
13   from him. . . . For my election.
14         During a City Council meeting in September 2020, defendant voted
15  in favor of the final terms of the Angel Stadium deal.  Both at that
16  time and later, defendant failed to notify other City Councilmembers
17  or the public that he had provided confidential inside negotiation
18  information to the Angels.  Also, at no time after that vote did
19  defendant notify other City Councilmembers or the public that he
20  expected to receive a $1 million campaign contribution from the
21  Angels after the City's sale of Angel Stadium to the Angels.
22  Defendant deleted the emails between him and the Angels consultant
23  and Ament, including his July 21, 2020 email and its attachment,
24  knowingly and willfully for the purpose of impeding and obstructing
25  an ongoing FBI investigation.  At the time he deleted the email
26  messages, it was reasonably foreseeable to defendant that the FBI
27  would be investigating whether federal law was violated during
28  negotiations related to the Angel Stadium sale.  By deleting the

email messages, defendant destroyed them because his email service
permanently deleted emails in the deleted folder after 30 days.

Defendant also lied about the Angel Stadium sale negotiations
and related matters when FBI agents interviewed him on May 12, 2022,
in Anaheim, California.  During that interview, defendant falsely
stated that he was expecting "nothing" from the Angels after the
Angel Stadium sale, when in truth, he was expecting to receive a $1
million campaign contribution for his election after the sale.
Defendant also falsely stated that he does not "conduct any City
Business" from his personal email.  Not only did defendant conduct
City business using his personal email, but he also communicated with
some City staff using that staff's personal email, purposely avoiding
using the staff member's official City email address.  For example,
on October 22, 2020, using his personal email, defendant sent an
email message wherein he wrote: "[Angels consultant] and Todd
[Ament]: please do NOT Reply All to this email – sent to WRONG CITY
EMAIL FOR [City employee]. Please ONLY use PERSONAL EMAIL FOR [City
employee] – []@gmail.com. Thanks."  Defendant also falsely stated
that he did not recall ever providing information about the Stadium
sale to the Angels consultant during negotiations over that sale.
Defendant knowingly and willfully made these false statements with
knowledge both that the statements were untrue and that his conduct
was unlawful.  Defendant's false statements were material to the then
on-going FBI investigation of defendant's possible violation of
federal law, including public corruption.

Additionally, from October 2020 to early November 2020,
defendant knowingly, intentionally, and with the intent to defraud,
devised and executed a scheme to defraud the State of California of

more than $15,000 of sales tax revenue.  In October 2020, defendant purchased a used helicopter for approximately $205,000.  At that time, defendant fraudulently represented that he resided in Arizona, even though he lived in Anaheim, California, and the helicopter was hangared in Chino, California.  Defendant used a mailing address in Scottsdale, Arizona, which belonged to an Anaheim businessperson. Defendant's false statement about his residency was material in that it affected defendant's sales tax liability for the helicopter purchase.  He made the false representation for the purpose of avoiding a 7.75% sales tax imposed by the State of California.  Had defendant truthfully reported that he resided in California, defendant, as he well knew, would have incurred a $15,887 tax liability.  On November 2, 2020, acting for the purpose of executing the scheme to defraud the State of California, defendant caused the transmission of an email message in interstate commerce from the helicopter broker to the title company, which instructed that the helicopter be registered in the State of Arizona.  Based upon his fraudulent use of the Arizona address, defendant defrauded the State of California of approximately $15,887 in California sales tax.

Defendant also provided false information to the Federal Aviation Administration ("FAA") of the U.S. Department of Transportation.  On November 10, 2020, defendant submitted FAA Form 8040-1, "Aircraft Registration Application," for the helicopter, which defendant signed and certified as true.  Right above his signature, the Form provided a warning that under federal law, any false, misleading, or fraudulent statements or representations could result in imprisonment and/or a fine.  Defendant falsely represented on that form that his permanent mailing address was in Scottsdale,

1 | Arizona, when in truth and fact, defendant lived in Anaheim,
2 | California, and his permanent mailing address was in Anaheim,
3 | California.  Defendant also provided that false address on FAA Form
4 | 8050-2, "Aircraft Bill of Sale."  Defendant knowingly and willfully
5 | made these false statements and with knowledge that the statements
6 | were false and his conduct was unlawful.  Defendant's false
7 | statements were material to the operations of the FAA.

SENTENCING FACTORS

8 | 16.  Defendant understands that in determining defendant's
9 | sentence the Court is required to calculate the applicable Sentencing
10 | Guidelines range and to consider that range, possible departures
11 | under the Sentencing Guidelines, and the other sentencing factors set
12 | forth in 18 U.S.C. § 3553(a).  Defendant understands that the
13 | Sentencing Guidelines are advisory only, that defendant cannot have
14 | any expectation of receiving a sentence within the calculated
15 | Sentencing Guidelines range, and that after considering the
16 | Sentencing Guidelines and the other § 3553(a) factors, the Court will
17 | be free to exercise its discretion to impose any sentence it finds
18 | appropriate up to the maximum set by statute for the crimes of
19 | conviction.

17.  Defendant and the USAO agree to the following applicable
Sentencing Guidelines factors:

Count One (Obstruction of Justice):

Base Offense Level:                14            U.S.S.G. § 2J1.2(a)

Count Two (Wire Fraud):

Base Offense Level:                 7            U.S.S.G. § 2B1.1(a)

$15k < loss < $40k:                +4        U.S.S.G. § 2B1.1(b)(1)(C)

Count Three (False Statement to FAA):

16

| | | | |
|---|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2B1.1(a)(2) |
| $15k < loss < $40k: | +4 | U.S.S.G. § 2B1.1(b)(1)(C) |

Count Four (False Statement to FBI):

| | | | |
|---|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. § 2B1.1(a)(2) |

For Count One, the parties stipulate that based upon the facts of the case, Section 2J1.2(c)'s cross reference does not apply.  The parties agree that the defendant is entitled to a one-level downward variance under Section 3553(a) as recognition of defendant's early acceptance of responsibility, based upon defendant's: (1) immediately resigning from his position as Anaheim City Mayor upon public disclosure of the FBI's investigation; (2) immediately paying to California the $15,887 in sales tax that he had evaded, upon public disclosure of the FBI's investigation; and (3) entering this pre-indictment disposition, which has a robust factual basis and waives most appellate rights. The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 3(c) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 30 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Notwithstanding the previous sentence, the government reserves the right to argue that for Count One, the two-level increase under Guidelines Section 2J1.1(b)(3) applies, and defendant reserves the right to argue that proposed Guidelines Section 4C1.1 applies, if

1  that new Section is enacted by the U.S. Sentencing Commission before

2  defendant's sentencing.   Pursuant to Guidelines Sections 3D1.1-3D1.5,

3  the parties agree that, if the Court applies a 2-level increase under

4  Section 2J1.1(b)(3), a one-level multiple count adjustment applies,

5  but if the Court does not apply a two-level increase pursuant to

6  Section 2J1.1(b)(3), a two-level multiple count adjustment applies.

7  Defendant agrees, however, that if, after signing this agreement but

8  prior to sentencing, defendant were to commit an act, or the USAO

9  were to discover a previously undiscovered act committed by defendant

10  prior to signing this agreement, which act, in the judgment of the

11  USAO, constituted obstruction of justice within the meaning of

12  U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set

13  forth in that section and to argue that defendant is not entitled to

14  a downward adjustment for acceptance of responsibility under U.S.S.G.

15  § 3E1.1.

16      18.  Defendant understands that there is no agreement as to

17  defendant's criminal history or criminal history category.

18      19.  Defendant and the USAO reserve the right to argue for a

19  sentence outside the sentencing range established by the Sentencing

20  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

21  (a)(2), (a)(3), (a)(6), and (a)(7).

22                    WAIVER OF CONSTITUTIONAL RIGHTS

23      20.  Defendant understands that by pleading guilty, defendant

24  gives up the following rights:

25          a.   The right to persist in a plea of not guilty.

26          b.   The right to a speedy and public trial by jury.

27          c.   The right to be represented by counsel -- and if

28  necessary have the Court appoint counsel -- at trial.   Defendant

1  understands, however, that, defendant retains the right to be
2  represented by counsel -- and if necessary have the Court appoint
3  counsel -- at every other stage of the proceeding.
4      d.    The right to be presumed innocent and to have the
5  burden of proof placed on the government to prove defendant guilty
6  beyond a reasonable doubt.
7      e.    The right to confront and cross-examine witnesses
8  against defendant.
9      f.    The right to testify and to present evidence in
10  opposition to the charges, including the right to compel the
11  attendance of witnesses to testify.
12     g.    The right not to be compelled to testify, and, if
13  defendant chose not to testify or present evidence, to have that
14  choice not be used against defendant.
15     h.    Any and all rights to pursue any affirmative defenses,
16  Fourth Amendment or Fifth Amendment claims, and other pretrial
17  motions that have been filed or could be filed.
18                 <u>WAIVER OF APPEAL OF CONVICTIONS</u>
19     21.   Defendant understands that, with the exception of an appeal
20  based on a claim that defendant's guilty pleas were involuntary, by
21  pleading guilty defendant is waiving and giving up any right to
22  appeal defendant's convictions on the offenses to which defendant is
23  pleading guilty.  Defendant understands that this waiver includes,
24  but is not limited to, arguments that the statutes to which defendant
25  is pleading guilty are unconstitutional, and any and all claims that
26  the statement of facts provided herein is insufficient to support
27  defendant's pleas of guilty.
28

                                19

## WAIVER OF APPEAL AND COLLATERAL ATTACK

22.  Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, including, to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than 16 months or within a guideline range corresponding to an offense level 12; (c) the fine imposed by the Court, provided it is no more than $55,000; (d) the amount and terms of any restitution order, provided it requires payment of no more than $15,887.50; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

23.  Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts

provided herein is insufficient to support defendant's pleas of guilty.

24. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 30 months of imprisonment, the USAO gives up its right to appeal any portion of the sentence.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

25. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

26. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

27.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

28.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by

1  defendant, under oath, at the guilty plea hearing (if such a hearing
2  occurred prior to the breach); (ii) the agreed to factual basis
3  statement in this agreement; and (iii) any evidence derived from such
4  statements, shall be admissible against defendant in any such action
5  against defendant, and defendant waives and gives up any claim under
6  the United States Constitution, any statute, Rule 410 of the Federal
7  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
8  Procedure, or any other federal rule, that the statements or any
9  evidence derived from the statements should be suppressed or are
10 inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES
## OFFICE NOT PARTIES

13     29.  Defendant understands that the Court and the United States
14 Probation and Pretrial Services Office are not parties to this
15 agreement and need not accept any of the USAO's sentencing
16 recommendations or the parties' agreements to facts or sentencing
17 factors.

18     30.  Defendant understands that both defendant and the USAO are
19 free to: (a) supplement the facts by supplying relevant information
20 to the United States Probation and Pretrial Services Office and the
21 Court, (b) correct any and all factual misstatements relating to the
22 Court's Sentencing Guidelines calculations and determination of
23 sentence, and (c) argue on appeal and collateral review that the
24 Court's Sentencing Guidelines calculations and the sentence it
25 chooses to impose are not error, although each party agrees to
26 maintain its view that the calculations in paragraph 17 are
27 consistent with the facts of this case.  While this paragraph permits
28 both the USAO and defendant to submit full and complete factual

1  information to the United States Probation and Pretrial Services

2  Office and the Court, even if that factual information may be viewed

3  as inconsistent with the facts agreed to in this agreement, this

4  paragraph does not affect defendant's and the USAO's obligations not

5  to contest the facts agreed to in this agreement.

6      31.  Defendant understands that even if the Court ignores any

7  sentencing recommendation, finds facts or reaches conclusions

8  different from those agreed to, and/or imposes any sentence up to the

9  maximum established by statute, defendant cannot, for that reason,

10 withdraw defendant's guilty pleas, and defendant will remain bound to

11 fulfill all defendant's obligations under this agreement.  Defendant

12 understands that no one -- not the prosecutor, defendant's attorney,

13 or the Court -- can make a binding prediction or promise regarding

14 the sentence defendant will receive, except that it will be within

15 the statutory maximum.

16                       NO ADDITIONAL AGREEMENTS

17     32.  Defendant understands that, except as set forth herein,

18 there are no promises, understandings, or agreements between the USAO

19 and defendant or defendant's attorney, and that no additional

20 promise, understanding, or agreement may be entered into unless in a

21 writing signed by all parties or on the record in court.

22 ///

23 ///

24 ///

25

26

27

28

24

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

JOSEPH T. MCNALLY
United States Attorney,
Acting Under Authority Conferred
by 28 U.S.C. § 515


_____          08,16,2023
CHARLES E. PELL                     _____
MELISSA S. RABBANI                  Date
Assistant United States Attorneys
Santa Ana Branch Office


_____          8-14-23
HARISH SINGH SIDHU                  _____
Defendant                           Date


_____          8/14/23
PAUL MEYER/CRAIG WILKE              _____
Attorneys for Defendant             Date
HARISH SINGH SIDHU

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

1  of relevant Sentencing Guidelines provisions, and of the consequences

2  of entering into this agreement.  No promises, inducements, or

3  representations of any kind have been made to me other than those

4  contained in this agreement.  No one has threatened or forced me in

5  any way to enter into this agreement.  I am satisfied with the

6  representation of my attorney in this matter, and I am pleading

7  guilty because I am guilty of the charges and wish to take advantage

8  of the promises set forth in this agreement, and not for any other

9  reason.

10

11  _____          8-14-23
    HARISH SINGH SIDHU                      _____
    Defendant                               Date

12

13              CERTIFICATION OF DEFENDANT'S ATTORNEY

14      I am HARISH SINGH SIDHU's attorney.  I have carefully and

15  thoroughly discussed every part of this agreement with my client.

16  Further, I have fully advised my client of his rights, of possible

17  pretrial motions that might be filed, of possible defenses that might

18  be asserted either prior to or at trial, of the sentencing factors

19  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

20  provisions, and of the consequences of entering into this agreement.

21  To my knowledge: no promises, inducements, or representations of any

22  kind have been made to my client other than those contained in this

23  agreement; no one has threatened or forced my client in any way to

24  enter into this agreement; my client's decision to enter into this

25  agreement is an informed and voluntary one; and the factual basis set

26  ///

27  ///

28  ///

                                26

forth in this agreement is sufficient to support my client's entry of

guilty pleas pursuant to this agreement.

_____          8/14/23
PAUL MEYER/CRAIG WILKE                      _____
Attorneys for Defendant                    Date
HARISH SINGH SIDHU